**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| ROCKET MORTGAGE, LLC,<br>A Michigan limited liability<br>company,<br><br>Plaintiff,<br><br>v.<br><br>HAMRO LENDING GROUP, LLC,<br>A Pennsylvania limited liability<br>company, and INDRA ADHIKARI,<br>an individual,<br><br>Defendants. | ) | Civil Action No. 2:23-cv-10572<br>Hon. Matthew F. Leitman |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN CASE TO ENFORCE SETTLEMENT, TO COMPEL EXECUTION OF THE SETTLEMENT AGREEMENT AND MUTUAL RELEASE, AND FOR SANCTIONS AND ATTORNEY FEES**

**COME NOW** Defendants HAMRO LENDING GROUP, LLC ("Hamro") and INDRA ADHIKARI ("Adhikari") (collectively "Defendants"), by and through their undersigned counsel, and respond in opposition to Plaintiff Rocket Mortgage, LLC's ("Rocket's") Motion to Reopen Case to Enforce Settlement, to Compel Execution of the Settlement Agreement and Mutual Release, and for Sanctions and Attorney Fees ("the Motion," Dkt. 41), filed on October 6, 2026:

**SUMMARY**

The parties **did** settle this case. But what Rocket's Motion seeks to enforce is **not** what the parties agreed to.

As the Motion's Exhibit A shows, Defendants' counsel emailed a settlement agreement to Rocket's counsel on March 9, 2026.[1] (*See* Motion Exhibit A at p. 4, Dkt. 41-1.) That agreement ("the March 9 Agreement," attached hereto as Exhibit 1) accurately reflected the parties' extensive prior negotiations. Rocket's counsel agreed to its material terms, responding the same day: "I do not have particularly strong objections to anything you did, subject to perhaps a few **non-substantive wording tweaks**." (Motion Exhibit A at p. 4, Dkt. 41-1; emphasis added.)

The March 9 Agreement was the last written agreement exchanged between the parties prior to Plaintiff notifying the Court, also on March 9, that it had reached a settlement with Defendants. (*See* Motion Exhibit A at p. 7, Dkt. 41-1.) Thus, according to the cases cited in Rocket's own Motion, **the March 9 Agreement is ready for the Court to enforce**. *See Remark, LLC v. Adell Broad. Corp.*, 702 F.3d 280, 283 (6th Cir. 2012) ("The question is whether the parties reached agreement on the material terms of the contract/settlement. If they did, the later decision of one party not to sign a formal memorialization of that agreement

[1] All dates in this Response are 2026 unless a different year is stated.

does not by itself retroactively change the agreement already reached."). Rocket, not Defendants, is the party attempting to retroactively change the March 9 Agreement by refusing to sign it.

The purported agreement that Rocket now seeks to enforce (Motion Exhibit B, Dkt. 41-2) was not provided to Defendants' counsel until May 1—almost two months after the parties reached a meeting of the minds and informed the Court of their settlement—and was materially different from what the parties had already agreed to. In paragraph 21, about "Non-Disparagement / Confidentiality," the March 9 Agreement states that Defendant Indra Adhikari may disclose "Confidential Information[2] … in assisting with obtaining employment, license or similar approval to conduct business by Adhikari." (March 9 Agreement at ¶ 21.B, Exhibit 1 hereto.) That language, which Rocket left out of the document it circulated on May 1 (Motion Exhibit B, Dkt. 41-2) and has since refused to accept, was and remains **essential** to Mr. Adhikari's consent to settlement. Defendant returned a redlined version of Rocket's May 1 proposal accepting all changes except as to the essential provision in paragraph 21 that Rocket knew from the beginning was an essential part of the agreement. (See Email and redlined Agreement dated May 3, 2026).

---

[2] The March 9 Agreement defined Confidential Information as "this Agreement and its terms, and the negotiations that culminated in the Agreement and any other non-public information concerning the Lawsuit." (¶ 21, Exhibit 1 hereto.) Rocket's purported agreement uses identical language to define Confidential Information. (Motion Exhibit B at ¶ 21, Dkt. 41-2.)

The Complaint accuses Mr. Adhikari of fraud, among other things. It is impossible for him to obtain appropriate employment without disclosing "confidential information" about this case or its settlement, when an unexplained fraud accusation appears on his background check. For that reason, as Defendants have steadfastly communicated to Plaintiff repeatedly for more than a year, no settlement that requires Mr. Adhikari, as opposed to Hamro, to pay towards settlement or for Adhikari to remain silent about the facts and history of this case is acceptable. (*See* Background, *infra*.).

Rather than granting Rocket's Motion, the Court should enforce, and compel Rocket to execute, the parties' March 9 or May 3 Agreement in which all of Rocket's changes were accepted except as to paragraph 21. Given Rocket's obstinance and bad faith in refusing to execute that agreement, the Court should award the sanctions and attorney's fees that Rocket seeks to Mr. Adhikari, who is and has been a low-wage worker and received government assistance during and as a result of this litigation.

## BACKGROUND

The Background section of Rocket's Motion describes the parties' settlement negotiations as if they only **began** after the parties told the Court, on March 9, that they had settled. (*See* Motion at p. 11, Dkt. 41.) But March 9 was the

**end** of settlement negotiations, not the beginning. It would be strange to announce a settlement without negotiating it first.

The relevant settlement negotiations go back to at least October 4, 2025, when Defendants' counsel told Rocket's counsel that Defendants were "open to giving something to settle the case," but only on the condition that "any amount he [*i.e.*, Mr. Adhikari] pays is paid on behalf of the company [*i.e.*, Hamro] and that we have an agreement that there is no clear evidence at this time that he committed fraud." (*See* Oct. 4, 2025 Email, attached hereto as Exhibit 2.) That position was in harmony with the argument Defendants have made throughout this case, that it was **Rocket's duty**, not Mr. Adhikari's, to verify the accuracy of mortgage application documents provided by loan applicants. (*See* Defendant Adhikari's Brief in Opposition to Plaintiff's Motion for Summary Judgment at p. 7, Dkt. 31.)

This Court has already denied Rocket's motion for summary judgment as to the fraud claims against Mr. Adhikari. (*See* Order, Dkt. 34.) If there was any wrongful conduct here, it was either by the loan applicants – against whom **Mr. Adhikari agreed to cooperate with Rocket** in pursuing, which Rocket has declined to do (*see* Oct. 7, 2025 Email, attached hereto as Exhibit 3) – or by Rocket's own failure to investigate those applicants and for its conduct in this litigation. Defendants' October 7, 2025 email again emphasized the importance of leaving Mr. Adhikari personally out of any payment or admission of responsibility:

"Money to be paid on behalf of Hamro with settlement agreement making him [*i.e.* Mr. Adhikari] liable but dismissing case with prejudice noting inconclusive evidence whether he was involved in the borrower's fraud." (Oct. 7, 2025 Email, attached hereto as Exhibit 3.)

After those October 2025 communications, settlement negotiations continued—with counsel on both sides repeatedly noting that only Hamro, and not Mr. Adhikari, would agree to pay anything. On January 28, Defendants' counsel asked Rocket's counsel: "Were you able to get settlement authority from Rocket yesterday? … Again, it would be **paid by Hamro**." (Jan. 28, 2026 Email, attached hereto as Exhibit 4; emphasis added. *See also* Jan. 26, 2026 Email, attached hereto as Exhibit 5 ("As discussed, that amount would be **paid on behalf of Hamro**, not the individual.").) Rocket's counsel, at that time, had no objection to Hamro being the only party held responsible. In a February 5 email, Rocket's counsel asked Defendants' counsel, "Can you definitively represent that your client **(on behalf of Hamro)** could pay the $10k up front?" (Feb. 5, 2026 Email, attached hereto as Exhibit 6; emphasis added.) In short, all parties were on board with the idea that Mr. Adhikari individually was not to be held responsible for anything in any settlement agreement.

In early February, the parties began zeroing in on a final agreement. Rocket's counsel emailed, "I spoke with my client and was encouraged. Though

final approval is still being sought, the reaction to your revised offer was favorable, subject perhaps to further discussion on non-monetary terms." (Feb. 11, 2026 Email, attached hereto as Exhibit 7.) Rocket's counsel followed up on February 20, stating that Rocket "will accept … a judgement **against Hamro only** … to resolve the case as to **all defendants**." (Feb. 20, 2026 Email, attached hereto as Exhibit 8; emphasis added.) In early March, in response to a draft agreement proposed by Rocket, Defendants' counsel again emphasized that "there needs to be no agreement or payment by Indra, only Hamro." (March 5, 2026 Email, attached hereto as Exhibit 9.)

These negotiations culminated on March 9, when as discussed in the Summary, *supra*:

- Defendants' counsel emailed the March 9 Agreement to Rocket's counsel (Motion Exhibit A at p. 4, Dkt. 41-1); then
- Rocket's counsel responded that "I do not have particularly strong objections to anything you did, subject to perhaps a few non-substantive wording tweaks" (Motion Exhibit A at p. 4, Dkt. 41-1); after which
- **Rocket's counsel**, not Defendants', notified the Court that the parties had settled. (Motion Exhibit A at p. 7, Dkt. 41-1.)

It is around early March when the story in Rocket's Motion misleadingly begins. But Rocket's truncated story omits facts relevant to the March 9 Agreement. On April 16, for example, Defendants' counsel re-forwarded their October 7, 2025 email to Rocket, highlighting both the importance of excluding Mr. Adhikari individually from any liability and the lack of evidence of his personal involvement in any wrongdoing.[3] (*See* April 16, 2026 Email, attached hereto as Exhibit 10.) That communication was a follow-up to Defendants' counsel's April 11 email reemphasizing the importance (discussed in the Summary, *supra*) of paragraph 21. (See Email attached hereto as Exhibit 11). Even more importantly, those communications explain the importance of letting Mr. Adhikari explain the facts of this case to potential employers, as protected by subparagraph 21.B of the March 9 Agreement.

As for Rocket's complaints about Defendants' purported refusal to finalize a settlement: Rocket should look in the mirror. This case was over and done on March 9. In Rocket's counsel's own words, only "a few non-substantive wording tweaks" remained to be finalized. (Motion Exhibit A at p. 4, Dkt. 41-1.) The only hold-up has been Rocket's refusal to agree to one simple term that Defendants have emphatically made non-negotiable for more than a year and made clear prior

---

[3] In particular, Adhikari has consistently denied any involvement in what he contends is Rocket's wrongdoing in this matter.

to Rocket announcing to this Court that it had reached a settlement. The Court should deny Rocket's Motion, enforce the March 9 Agreement, and award Defendants their fees in responding to this motion.

## **ARGUMENT**

A district court has "broad, inherent authority and equitable power … to enforce an agreement in settlement of litigation pending before it, even where that agreement has not been reduced to writing." *Bostick Foundry Co. v. Lindberg, Div. of Sola Basic Indus., Inc.*, 797 F.2d 280, 283 (6th Cir. 1986) (citations omitted). In interpreting a settlement agreement, under general principles of contract law, "[t]he existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001).

Rocket is right about the importance of *Remark*, 702 F.3d 280, but wrong about the governing settlement agreement and about which party is in breach of it. Under *Remark*, the March 9 Agreement controls here. *Remark* says that "[t]he question is whether the parties reached agreement on the material terms of the contract/settlement." *Id.* at 283. Here, Rocket admitted on March 9 that its only qualms with the March 9 Agreement were "perhaps a few non-substantive wording tweaks." (Motion Exhibit A at p. 4, Dkt. 41-1.) Merely hours after reviewing the March 9 Agreement and writing those words, Rocket relied on that agreement to

email the Court to say that the parties "have reached a settlement in principle." (Motion Exhibit A at p. 7, Dkt. 41-1.) Rocket proposed some additional changes, all of which Defendants accepted except for Rocket's continued insistence that Adhikari not disclose anything about the case, even while trying to get a job or pass a background check, which was a fundamental original term to settlement before March 9th. (See Exhs 1 and 12).

There is little if any daylight in this context between the meanings of "substantive" and "material." *Compare* https://www.merriam-webster.com/dictionary/substantive ("having substance: involving matters of major or practical importance to all concerned"), *with* https://www.merriam-webster.com/dictionary/material ("having real importance or great consequences"). When Rocket's counsel said its objections to the March 9 Agreement were "non-substantive," that was effectively no different from saying they were immaterial, and therefore irrelevant under *Remark* to the binding nature of the March 9 Agreement. To the extent there were minor changes Rocket wanted, Defendants accepted them all in the May 3 redlined Agreement. (See Exh 12).

The same goes for Rocket's arguments about sanctions and fees. This case has been a few strokes of Rocket's pen away from settling since March, more than seven months ago. It was Rocket's insistence on "a few non-substantive wording tweaks" and subsequent attempt to substantially alter a core term of the parties

agreement that has prevented this matter from being resolved. Rocket proposed changes to the March 9th agreement all of which Defendants accepted except for paragraph 21 which was reiterated over and over to Plaintiff prior to Rocket announcing the parties had settled that Adhikari would not accept what Rocket continues to demand as a term in the agreement. Accordingly, Defendants request that this Court enter an Order requiring Rocket to sign the March 9th or May 3, 2026 agreement and paying Defendants' costs in having to respond to this motion.

Respectfully submitted this 20th day of October, 2026.

*/s/ Dane Steffenson*
Dane Steffenson (*Admitted Pro Hac Vice)*

DANE LAW LLC
3575 Piedmont Road, NE, Suite L120
Atlanta, GA 30305
(404) 919.9719
*Dane@TheDaneLawFirm.com*

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2026 a true and correct copy of the foregoing DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN CASE TO ENFORCE SETTLEMENT, TO COMPEL EXECUTION OF THE SETTLEMENT AGREEMENT AND MUTUAL RELEASE, AND FOR SANCTIONS AND ATTORNEY FEES was filed using the Eastern District of Michigan's CM/ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

Matthew Mitchell (P69810)
Madin, Hauser, Roth & Heller, P.C.
One Town Square, Fifth Floor
Southfield, MI 48076
(248) 827-1874
mmitchell@maddinhauser.com
*Attorney for Rocket Mortgage, LLC*

*/s/ Dane Steffenson*
Dane Steffenson

*Attorney for Hamro Lending Group, LLC and Indra Adhikari*