# Exhibit 1

**CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS**

This Confidential Settlement Agreement and Mutual Release of Claims ("**Agreement**") is made the last day it is executed by a party hereto ("**Effective Date**") and is by and between Rocket Mortgage, LLC ("**Rocket Mortgage**"), Hamro Lending Group LLC ("**Broker**"), and Indra Adhikari ("**Adhikari**") (Rocket Mortgage, Broker and Adhikari are collectively referred to hereinafter as the "**Parties**" and, individually, as a "**Party**"), and is based on the facts and representations in Section A-C below, all of which are agreed to be true.

A. Rocket Mortgage filed a Complaint against Broker and Adhikari in the United States District Court for the Eastern District of Michigan on March 10, 2023, entitled *Rocket Mortgage, LLC v. Hamro Lending Group LLC, et al,* Case No. 2:23-cv-10572. Rocket Mortgage filed a First Amended Complaint on June 4, 2024. (collectively, the Complaint and the Amended Complaint are referred to as the "**Lawsuit**").

B. The Lawsuit relates to representations and submissions made to Rocket Mortgage in connection with four (4) loans referenced in paragraph 11 of the First Amended Complaint ("**the Loans**") pursuant to a Broker Agreement between Rocket and Broker dated January 26, 2022 ("**Broker Agreement**") to which Broker was a party but not Adhikari.

C. Broker and Adhikari responded to the Complaint and Amended Complaint, denying all allegations of wrongdoing.

D. The Court granted Rocket Mortgage summary judgment against Broker for breach of the Broker Agreement and denied Rocket Mortgage's summary judgment motion against Adhikari.

D. The Parties, without any admission of liability, now wish to settle the Lawsuit to avoid further time, cost, and expense associated therewith.

NOW, THEREFORE, in consideration of the mutual conditions and covenants contained in this Agreement, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, Rocket Mortgage, Broker and Adhikari have agreed to settle the Lawsuit on the following terms:

1. **Purpose.** It is the intent of this Agreement to resolve, fully and forever, the Lawsuit in accordance with the obligations and pursuant to the terms contained herein.

2. **Settlement Payment.** Within five (5) days of Rocket Mortgage's signature on this Agreement, Broker shall cause Rocket Mortgage to be paid the total sum of Ten Thousand Dollars to resolve the finding of breach of contract against it on summary judgment and all other claims asserted in this Lawsuit against both Broker and Adhikari(the "**Settlement Payment**").

**Deleted:** thirty

**Deleted:** 30

**Deleted:** and/or Adhikari

3. **Entry of Broker Judgment.** Within five (5) days of Rocket Mortgage's signature on this Agreement and delivery of a signed copy of this Agreement to counsel for Broker, Broker shall execute the Consent Judgment attached as **Exhibit A** and deliver an original signed Consent Judgment to Rocket Mortgage's counsel in the Lawsuit together with authorization to submit same to the Court for entry.

4. **Dismissal of Lawsuit against Adhikari.** Within five (5) days of the occurrence of all of the following events, Rocket Mortgage shall submit the Stipulated Order of Dismissal with Prejudice and without Attorney Fees and Costs attached as **Exhibit B** to the Court for entry:

a. Rocket Mortgage's receipt of the Settlement Payment and successful deposit of said payment after awaiting sufficient time to ensure the payment is made in good funds.

b. Entry by the Court of the Consent Judgment against Broker pursuant to paragraph 3.

c. All parties' execution of this Agreement.

**Deleted:** Broker's and Adhikari's

5. **No Stay of Enforcement of Broker Judgment.** Broker waives all rights under federal and Michigan law to a stay of enforcement of the Broker Judgment upon entry. Broker further agrees that the Broker Judgment, upon entry by the Court, shall be immediately enforceable by Rocket Mortgage. However, unless Rocket Mortgage discovers new facts, it will not assert any sort of derivative liability claim, including piercing the Broker's corporate veil, based on facts currently available to Rocket Mortgage.

6. **Mutual Release of Claims.**

(a) Excepts for claims relating to a breach of this Agreement, and except for such rights and claims of Rocket Mortgage as set forth in Sections 17-20 below, which are expressly preserved and are not released hereby or subject to this Section 6(a), Rocket Mortgage releases and discharges Broker and Adhikari from all claims, demands, actions, causes of action, debts, liabilities, damages, costs, fees, expenses, rights, duties, obligations, liens, petitions, suits, losses, controversies, executions, offsets and sums of any kind or nature, whether direct or indirect, liquidated or unliquidated, contingent or actual, in law or equity, known or unknown, suspected or unsuspected or of whatever type or nature, whether known or unknown, foreseen or unforeseen, relating to the Lawsuit, the Broker Agreement, and the Loans.

(b) Except for claims relating to a breach of this Agreement, Broker and Adhikari, for themselves and on behalf of any their respective predecessors, successors, assigns, parent companies, subsidiaries, affiliates, holding companies, divisions, unincorporated business units, shareholders, members, officers, directors, employees and agents, representatives, attorneys spouse, agents, heirs, executors, trustees, administrators, and beneficiaries, hereby release and discharge Rocket Mortgage, its predecessors, successors, assigns, parent companies, subsidiaries,

affiliates, holding companies, divisions, unincorporated business units, shareholders, members, officers, directors, employees and agents, representatives and attorneys, from all claims, demands, actions, causes of action, debts, liabilities, damages, costs, fees, expenses, rights, duties, obligations, liens, petitions, suits, losses, controversies, executions, offsets and sums of any kind or nature, whether direct or indirect, liquidated or unliquidated, contingent or actual, in law or equity, known or unknown, suspected or unsuspected or of whatever type or nature, whether known or unknown, foreseen or unforeseen, relating to the Lawsuit, the Broker Agreement, and the Loans.

7. **Mutual Review.** Each party to this Agreement acknowledges and represents that: (a) each has read the Agreement; (b) each clearly understands the Agreement and each of its terms; (c) each fully and unconditionally consents to the terms of this Agreement; (d) each has had the benefit and advice of counsel of their own selection or the right to counsel; (e) each has executed this Agreement freely, with knowledge, and without duress; (f) each is not relying upon any other representations, either written or oral, express or implied, made to them by any person; and (g) the consideration received by them has been actual and adequate. No rule of construction that any ambiguity shall be construed against the drafter of this Agreement shall apply in interpreting the provisions of this Agreement.

8. **Non-Waiver.** Neither the waiver by any of the Parties of a breach or a default under any of the provisions of this Agreement, nor the failure of the Parties, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right or privilege under this Agreement will subsequently be construed as a waiver of any subsequent breach or default of a similar nature, or as a waiver of any such provisions, rights or privileges under this Agreement.

9. **Binding.** This Agreement binds and inures to the benefit of the Parties and their respective heirs, successors and assigns. No Party may assign or transfer any right or obligation under this Agreement without the prior written consent of the other Party.

10. **Complete Integration.** It is understood and agreed by the Parties that all understandings and agreements heretofore had between them with respect to matters covered by this Agreement are merged into this Agreement, which along with the Exhibits attached, fully and completely expresses the Parties' agreement to resolve the Lawsuit.

11. **Severability.** If any part of any provision of this Agreement or any other agreement, document, or writing given pursuant to or in connection with this Agreement is invalid or unenforceable under applicable law, that part is ineffective to the extent of that invalidity or unenforceability only, without in any way affecting the remaining parts of that provision or the remaining provisions of this Agreement.

12. **Counterparts.** To facilitate execution of this Agreement, the Parties may execute and exchange by electronic delivery of a PDF copy of this executed Agreement, which PDF copy is valid and binding. This Agreement may be executed in any number of counterparts, each of

which is deemed to be an original, and all counterparts will constitute one agreement.

13. **Decision.** The Parties each declare that, prior to the execution of this Agreement, they apprised themselves of sufficient relevant data in order that they might intelligently exercise their own judgments in deciding whether to execute and in deciding on the contents of this Agreement. The Parties each further declare that their decision to execute this Agreement is not predicated on or influenced by any declarations or representations not set forth in this Agreement by any other person or party or any predecessors in interest, successors, assigns, officers, directors, employees, agents or attorneys of any said person or party.

14. **Authority.** The individuals signing this Agreement represent and warrant that they, and each of them, are duly authorized and empowered to act on behalf of and to sign for the Parties for whom they have signed respectively. The Parties represent and warrant that they are the sole owners of the claims being settled by this Agreement, that such claims have not been sold, conveyed or assigned to any other party or Parties and that they have signed the Agreement.

15. **Amendment.** No alteration, amendment, change or addition to this Agreement shall be binding upon any party hereto unless and until reduced to writing and signed by all of the Parties hereto.

16. **Governing Law.** This Agreement is governed by and will be construed in accordance with Michigan law, regardless of its conflict of laws principles. The Parties agree that the Federal Court for the Eastern District of Michigan will retain jurisdiction over this matter and that any dispute arising from or concerning this Agreement shall be raised or filed in that Court.

17. **Disgorgement.** In the event that all or any portion of payments made towards the Broker Judgment are disgorged to a bankruptcy trustee or any other party in such a circumstance by way of settlement, order, judgment or otherwise, then Rocket Mortgage shall have the right to assert and/or file a claim against Broker for the full amount of the disgorged payments as well as for the remaining balance of the Broker Judgment less any payments already made by Broker and the Parties agree that Rocket Mortgage's rights with respect to any disgorged amount are expressly preserved and are not released hereby or subject to Section 6(a) above.

18. **Relief from the Automatic Stay.** If, prior to payment in full of the Broker Judgment, a bankruptcy petition or other insolvency proceeding, including a receivership, assignment for the benefit of creditors, composition agreement, or other similar type proceeding, is filed by or against Broker or in which Broker consents to or is involved, Broker agrees to either stipulate to relief from the automatic stay or not challenge or oppose any motion by Rocket Mortgage for relief from the automatic stay or other such similar stay of proceedings.

19. **Non-Dischargeable Obligations**. If, prior to the payment in full of the Broker Judgment, a bankruptcy petition or other insolvency proceeding, including a receivership, assignment for the benefit of creditors, composition agreement, or other similar type proceeding, is filed by or against Broker or in which Broker consents to or is involved, Broker agrees that it

will immediately notify Rocket Mortgage of the same and not object to the non-dischargeability of its obligations under this Agreement and the Broker Judgment in any such proceeding, and that the allegations of the Complaint and the Amended Complaint will be taken as true and correct without further proof in any subsequent bankruptcy, insolvency, or other proceeding.

Deleted:

20. **Non-Modifiable Obligations**. If, prior to the payment in full of the Broker Judgment, a bankruptcy petition or other insolvency proceeding, including a receivership, assignment for the benefit of creditors, composition agreement, or other similar type proceeding, is filed by or against Broker or in which Broker consents to or is involved, Broker agrees that it will not seek to modify or decrease the Broker Judgment.

21. **Non-Disparagement / Confidentiality.** The Parties shall not, at any time make statements or representations, or otherwise communicate, directly or indirectly, in writing, orally, or otherwise, or take any action which may, directly or indirectly, disparage each other. The Parties agree to maintain this Agreement and its terms, and the negotiations that culminated in the Agreement and any other non-public information concerning the Lawsuit (collectively "**the Confidential Information"**) as confidential on a going forward basis as of the Effective Date of this Agreement. To that end, the Parties agree that they will neither disclose nor reveal to any person or entity or directly or indirectly publish, publicize, disseminate or communicate to any person or entity the Confidential Information on a going forward basis as of the date of this Agreement, including but not limited to a prohibition from posting or otherwise disclosing the Confidential Information on the internet or any other paper or electronic media outlet (including but not limited to news organizations, websites, or newspapers, email, Facebook, X, *etc*.). The only permitted disclosure of the Confidential Information is to those specifically identified below ("**Authorized Recipients of Confidential Information**") and when such disclosure is permitted, there shall be no liability for disparagement for what is disclosed to the following Authorized Recipients of Confidential Information:

A. Attorneys, financial advisors, accountants, insurers, auditors, and other professional advisors who regularly have access to information of this type in order to perform their duties, or with whom the Parties may consult regarding any aspect of this Agreement, provided that such persons or entities first agree to maintain the Confidential Information they receive as confidential if they are not already subject to such a restriction;

B. Any federal, state or other regulatory agency or body or governmental authority, to which either Party may be required to report information of this type, or when such disclosure is specifically requested or demanded by such regulatory agency or body or governmental authority or provided in assisting with obtaining employment, license or similar approval to conduct business by Adhikari;

C. Federal state and local taxing authorities (such as, for example, the United States Internal Revenue Service), as necessary in tax returns or other tax reporting documents, and/or in response to an audit or similar inquiry;

D. A court of competent jurisdiction as required to enforce this Agreement, or in response to a subpoena or lawful court order; and/or

E. Employees or other personnel of Rocket Mortgage, if receiving information from other employees, personnel, representatives, or agents of Rocket Mortgage as part of information that is required to be shared among the relevant employees, Rocket Mortgage will identify and maintain the information as confidential to ensure it is not made available to personnel who have no need to access it.

Deleted: .

THE PARTIES UNDERSTAND AND AGREE WITH ALL OF THE PROVISIONS AND TERMS STATED ABOVE.

IN WITNESS WTHEIREOF, the Parties have executed this Settlement Agreement in counterparts on the dates set forth under their respective signatures:

**Rocket Mortgage, LLC**

By: ______________________________

Name: ______________________________

Title: ______________________________

Date: ______________________________

**Indra Adhikari,** as an individual

______________________________

Date: ______________________________

**Hamro Lending Group LLC**

______________________________

By: Indra Adhikari
Its: Member

Date: ______________________________